The first case for argument this morning is 18-2123, Netlist v. SK Hynix. Good morning, Your Honor. May it please the Court. Tom Wimbiscus on behalf of Netlist. The Board's decisions are problematic with error for three primary reasons. I'll touch on those and then I'll go into those in detail. First, the Board denied Netlist's procedural rights because Hynix failed to disclose the basis for any alleged inherency theory in its petition and later expanded upon that theory on reply by presenting new attorney argument without expert support and raising new factual issues. Second, the Board erred in its inherency analysis with respect to... on this test mode theory piece of it. Yes, Your Honor. Okay. That would be helpful to me. Sure, and that's... That bogs the BIS controller and simply the... Is it simply the question of whether the BIS controller satisfies the system memory controller cited in the claims? It's, in our view, more complicated than that, Your Honor. First, there is an aspect of it as to whether the BIS controller does satisfy the system memory controller. And with respect to that, a few points, Your Honor. First of all, the final written decision site in a one-sentence statement said that the Averbooz discloses that the BIS controller produces or generates control signals for the memory modules and then labeled that essentially as the system memory controller. But Averbooz... I'm sorry, but the one site that the final written decision made was to the institution decision, which recognized that it's the sequencer that produces the control signals that are used to manage the flow of data to and from the memory devices. The BIS controller doesn't operate alone to accomplish that effect. It must work with the sequencer. The sequencer does the processing of these high-level commands. And from those, it processes the commands, does parsing, and then attributes the timing. I have a very... I have laryngitis, so you're going to have to listen. And if you can't, I'll try to repeat it. Sure, Your Honor. My problem with that argument is the BIS controller actually controls the sequencer itself as well. So why isn't the BIS controller therefore controlling all of it? Because the BIS controller is the alleged system memory controller, and it operates with the... It controls the sequencer as the Averbooz reference. It controls in the sense that it issues high-level commands, but those high-level commands don't in and of themselves manage the flow of data to and from the memory. Well, the sequencers control the flow of data, but that's simply based on signals that are received from the BIS controller, right? That are processed, parsed, and then the sequencer alone imparts the timing such that those signals can be used once parsed to manage the flow of data to and from memory. The high-level commands from the BIS controller are not capable of doing that. Of doing what precisely? Of managing the flow of data to and from memory. And if you turn to the analysis with respect to that, petitioner's expert, Dr. Mazunder, doesn't... In his paragraph 70 at Appendix 662, he has one paragraph directed to this issue, and he never once uses... The construction manages the flow of data to and from the memory devices. He just puts a label on it and says these high-level commands are a system memory controller. But he clarifies also then in paragraph... So he doesn't apply to claim construction. And neither did the board in that respect. They just relied on Dr. Mazunder's analysis, which is a high-level command that has to be processed, and you have to have timing associated with that. And that's all done by the sequencer. Wait, but there was an... As you referred to it, there was an agreed-upon claim construction. It was agreed upon... Let me finish my question. I'm sorry, you're on. And that construction was a device that manages the flow of data to and from the memory of a system, right? Yes, that's... That's kind of broad. There's no reference to a particular activity with respect to timing and so forth. The parties, but not their experts, I'd submit, disputed whether or not that implicitly requires accounting for timing characteristics. And the testimony from both parties and the extrinsic evidence relied upon by Petitioner's expert was textbook evidence that said that managing the flow of data requires accounting for timing characteristics. And that a system memory controller operates and does that by providing address, control, and data signals. And it's Petitioner's expert who quoted the excerpt from the Baker textbook, Exhibit 1008, and he quoted it, and then he highlighted select portions of that, and included in that highlight is the notion that a system memory controller... I'm sorry, the memory controllers manage the movement of data into and out of DRAM devices, and it goes on to say, while accounting for timing characteristics. Netlist's expert agreed with that, so there's a dispute about the complete meaning of manage the flow of data to and from memory devices, whether that requires the accounting. And we submit that there should have been a further claim construction analysis to look at all of this extrinsic evidence. Wait, so did you go to the board and said your claim construction is inadequate and we need another claim? We pointed out in our patent owner response that both parties came in with the proposed claim construction, but during the proceeding, it became clear that there's a dispute about the meaning of that proposed construction. And in our view, that's under TEVA, the board should engage in further subsidiary fact findings in view of all this extrinsic evidence, which both parties pointed to, which says, as I just read, that managing the flow of data, which requires accounting for timing characteristics. Now, we're dealing with a term of art here acknowledged by both parties. Both parties agree that this construction comes out of these extrinsic evidence textbooks. The manage the flow of data didn't come out of the spec. It came out of the extrinsic evidence, and we submit that the board should have considered all the extrinsic evidence and not just portions of it. It should have engaged in more thorough... Wait, so what is the timing? What is their... And you say what their expert said was inadequate? Pardon me, ma'am? You said what their expert said was inadequate with respect to timing? Their expert acknowledged that timing is required to account for managing the flow, and that's what the expert pulled and highlighted from the Jacobs textbook, Exhibit 1008. And then he also backstopped that with Exhibit 1009, another textbook, where he exemplified managing the flow of data from a system memory controller requires address, control, and data signals. None of those are coming out of the BIST. That's not... And none of the timing is from the BIST. No. I think it was a last effort by Heinecks in their last brief tried to imply that the BIST controller manages the timing because it directs the sequencer. But that's just flatly inconsistent with the reference. Averbooge at appendix page 744, paragraph 30... But clearly the board rejected your construction that timing was part of the requirement. In the patent owner response. The board rejected your construction about timing? Yes. The board rejected... So you only get to Averbooge doesn't disclose the BIST controller modulating timing if we accept the premise that the board's claim construction itself is wrong. Yes. And our position is that the board should have engaged in further subsidiary fact finding on this dispute over the meaning of manage the flow of data. Does that require into and out of memory devices? Does that require timing, accounting for timing? And we submitted all the evidence from the extrinsic evidence that was submitted. Yes. I'm just trying to understand. Does your entire argument with regard to BIST hinge on us having to accept your claim construction? No. No. Part of it does. I think there's two points on the test mode. The first is that the BIST is at best one link in a chain and akin to a wire emitting a signal. A wire emitting a signal doesn't itself manage the flow of data. The BIST only operates by emitting high-level commands. It's the sequencer... Just to be curious, you think wires emit signals? Pardon me? Just curious. You think wires emit signals? Well, in the context of the board's initial claim construction as a device that emits a signal, an amplifier... You think the BIST is just a wire? No. I'm saying if you take that analogy to the extreme, just a device that emits a wire or other device that emits a signal doesn't achieve management of the flow. But you think a wire emits a signal? I'm just completely baffled. No. I'm referring to the board's initial claim construction. The board didn't say a wire emits a signal. No, the board didn't say a wire. It said a device that emits a signal, I believe. Yes, correct, because a wire can't emit a signal. That's technical nonsense. Well, I think in the context of how I was viewing this, Your Honor, that it takes more than an emission of a signal to manage the flow of data to and from memory. You have to account for timing. And that the BIST is but a leak in the chain, and the sequencer is part of that process. But the sequencer is separately claimed in here in the read to be the module controller, not the system memory controller. So it's part of the read. So two points with respect to that argument on test mode. One is, on the read, there's a dispute because the system memory controller, the BIST, would require the sequencer to unpack process and account for timing. And that's consistent with the submission on the record of what it means to manage the flow of data to and from memory. But secondly, we submit that the board should have engaged in subsidiary fact-finding because there is a dispute over the complete meaning of manage the flow of data to and from the memory devices. You've said repeatedly the board should have engaged in subsidiary fact-finding. Are you saying this is a question, part of a substantial evidence review? Or are you saying this is an error in claim construction? I'm saying it's an error of claim construction under TEVA where the parties cannot agree on their complete meaning of the term. That's an issue of law for the court. And what is the meaning of that? And in this case, it's clear that this is a term of argument. The board was compelled, required, in your view, to reconstrue the term that the parties, the construction of which the parties agreed to. On that particular issue, yes, on test mode, there was no construction wrestling with the details of whether or not manage the flow of data requires accounting for timing characteristics. And it's in the extrinsic evidence. There's testimony from both parties' experts to that effect. And that was implicit in the construction, proposed construction. Okay. We're into your rebuttal, so why don't we reserve it on the other side? I'm sorry? We're into your rebuttal time. Thank you. So we'll take it to the other side and reserve it. Thank you. Good morning, Your Honors. May it please the court, Joe McAuliffe for SK Heinex. The board properly found that Avra Booz, the anticipated- Can I just, I'm sorry, let me, can we just follow up on what we were discussing with your friend? And that is, is it your position that the VIST controller does not have to do anything with timing or that it, in fact, does? It does not. To be a system memory controller, it has to be a device that manages flow of data to and from the memory. That was the agreed interpretation. Now, managing timing could be an example of that management, but other things could be management as well. And here, it's unrebutted, really, that the VIST controller does perform a management function, in fact, a very high-level management function, by determining which algorithms and commands to send to the rest of the system, like the sequencer, and thereby control the testing of the memory chips themselves by determining when and what patterns of data are written into the memory and read out so as to perform the self-test. So, that was a finding of fact, I think, by the board, that the VIST controller satisfied that agreed claim construction. It's certainly substantial evidence in the record of that. We cited several paragraphs from the Avrabou's reference. We have our expert's testimony. It's a finding of fact supported by substantial evidence. Now, they have asked in this court and below for a more limited interpretation, but it's odd because in their preliminary response, they agreed. In fact, the only thing they said about the interpretation of system memory controller in their preliminary response, which is at the appendix, page 121, is, quote, patent owner agrees that a system memory controller is a device that manages the flow of data to and from the memory. Interestingly, even more, in the patent owner response, they actually asserted that that interpretation of system memory controller is what a person of ordinary skill in the art would understand the phrase to mean. So, they admitted that the ordinary meaning of that term is our interpretation. So, that, I think, unless they can... But he says implicit in managing the flow of data is timing and that both experts agreed on that. So, he says when we agreed to that construction, given that both experts incorporated timing as a condition, we understood that to be part of what we were agreeing to. At least that's what I understand his argument to be. That may be his argument. Our expert never agreed that that was a condition of management. It might be an example of management dealing with timing. But we very clearly did not put timing in our proposed construction. And they very clearly agreed to our proposed construction that didn't say anything about timing. So, I don't understand how he can say now, well, no, we always expected these words to mean timing, even though they didn't say anything about timing. So, I think the interpretation, and as far as the subsidiary fact finding that might work... Well, would managing flow require, if not timing precisely, at least ordering? Well... Ordering. Ordering, you know, if I manage the flow to the bathroom, right? I'm not sending everybody in at once. They're ordering how they access the bathroom. I don't know if I can agree it would require it. I would certainly agree that could be an example of it. But I would also point out that the BIS controller does that, Your Honor. It's the one that determines what commands and when. What do you think managing the flow of data means? How do you achieve management of the flow of data? Not just managing data, but the flow of data. I mean, that flow word sort of makes me think of a river. Yeah, sure. Well, the BIS controller manages, first of all, when that's going to happen for self-test purposes. And it's also going to manage the algorithms that are used, including the bits. So my understanding of this technology, and I think there's a little in the record on this, that different patterns of bits can be used to test these. So at some high level, it does control timing to a certain extent, just as the way it operates. It's a high level of control on testing and communicating the algorithms. So that's why I started off by asking you what your position was, that no, it doesn't do timing, but we don't need timing, or kind of depends on how high level you're viewing the limitation of timing. It would be the latter. I mean, I don't think controlling timing is required by the agreed-upon construction. But I do, as I said before, I think it's an example of managing the flow of data. And yes, you could conclude on this record here that the BIS controller does exactly that, because it does determine the algorithms used and when to use them. And so it manages the flow of data in that sense. These issues, whether the finding that the BIS controller is a system memory controller, is supported by substantial evidence, and whether the claim interpretation is correct, and I think it's undisputably correct here. If we agree with you that the BIS controller... Forget it, you're not technically the guy arguing that. Go ahead, keep going. I was just going to say, this is all you have to decide for this case, right? Because the board found anticipation on two alternative bases, test mode and normal mode. Unless you have more questions on test mode, I'm happy to move to normal mode. Did he cover normal mode? He did not, so I'm happy to, if you're not interested. I mean, if you want to open the door to him addressing something on rebuttal that he otherwise can't address, that's your problem. I will cede the rest of my time unless there are more questions. Thank you. Your Honor, I'd like to revisit specifically what the evidence was on what it means to manage the flow of data and take you to Appendix Pages 662 through 665. That's Dr. Mazunder, INEX's expert. And on Paragraph 70, he doesn't at all use or apply the claim construction, manage the flow of data to and from memory devices. You won't find it there. And where you will find it is in the analysis with respect to normal mode signals, which he says involve a use of address control and data signals. I guess I'm confused. He is describing, as an expert should, how he understands the BIST controller to operate in the context of the prior art. Are you saying the Board can't read his analysis and from that conclude that the BIST controller therefore processes inputs? What I'm saying is that... You're saying he has to have the magic claim words or his testimony. I'm saying he made an argument pertaining to high-level command signals where he didn't apply, purport to apply, the agreed claim construction of managing the flow of data to and from memory devices. Yes, but he describes what the BIST controller does, which sounds like managing data to me the way he describes it in Paragraph 70. So are you saying the Board can't rely on his articulation and conclude that that meets the managing data requirement? It can if, in fact, it does meet the definition of manage the flow. And flow requires interacting with the memory devices. And where the expert gets into the meat about what it means to manage the flow is Paragraph 71 and 72 and 73. And on Paragraph 72, he says that manages the flow of data to and from the system is shown here. And he takes a quote and he quotes Jacob's textbook, Exhibit 1008 of page 497, where he references and highlights the text he selected. Memory controllers manage the movement of data into and out of DRAM devices while ensuring for, among other things, timing characteristics. That's what it means to manage the flow of data, not just a cause and effect in a circuit where an upstream circuitry has an impact downstream. This is managing the flow of data to and from the memory devices. And that requires accounting for timing. You'll find it right here in his textbook. And he goes on to further delineate that in Paragraph 73 where he cites another extrinsic evidence piece, Exhibit 1009, where he shows address, data, and control signals are used to achieve that. You won't find address control and data signals from the BIS controller. Those are just high-level commands. So I'll grant you there is a cause and effect, if you will, but the implementation of the flow requires not just the BIS, but also the sequencer. It's those two together that are needed to manage the flow of data to and from the memory devices. Otherwise, you just have a cause and effect situation where one upstream component has an effect of something downstream in an electrical circuit, and that's too broad. It doesn't reflect managing the flow of data any more than perhaps powering up the circuit. What the expert made clear here is that managing the flow as interpreted by a person of skill in the art, which is why he said he submitted this and quoted this particular text, requires accounting for timing characteristics. And that list expert agreed. The bottom line is the court didn't wrestle with that. The court gave it short shrift, I'm sorry, the board, and reasoned that it's not part of the claim construction. But in our view, it is a part of, it's implicit in the claim construction, and the board should at least engage in some consideration and fact-finding to see if this agreed-upon term of art should be viewed as implicating timing characteristics. You're beyond your time. Thank you, Your Honor. The next case for argument this morning is 18-2357. Again, Natlass versus S.K. Hyman.